STATE OF NEBRASKA, APPELLEE, V. DEBBIE ANN CUNY, APPELLANT.
595 N.W. 2d 899

Filed June 25, 1999.    No. S-98-607.

David E. Veath for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Debbie Ann Cuny appeals her conviction for driving under the influence (DUI), a violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993). On our own motion, we removed the matter to this court under our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. We reverse, and dismiss.

## BACKGROUND

On July 28, 1996, Officers Wilmer Youngman and Tino Lopez, both police officers with the Pine Ridge Police Department of the Pine Ridge Indian Reservation in South Dakota, were on routine patrol near the Nebraska-South Dakota border. When the officers were about one-quarter mile north of the South Dakota border on Highway 407, they observed a vehicle enter Highway 407 from a side road and head south toward the officers, partially in the northbound lane. The officers observed the vehicle continue to travel south partially in the northbound lane toward them. The officers pulled their patrol

car over toward the shoulder of the road as the approaching vehicle came closer. The vehicle then started pulling back into its own lane and went past the officers' patrol car. The officers turned their patrol car around, activated the car's red emergency lights, and followed the vehicle. The vehicle did not stop until after it had left the Pine Ridge Indian Reservation and traveled approximately one-quarter mile across the Nebraska border into Sheridan County.

Lopez approached the vehicle and discovered that the driver was Cuny. Lopez asked Cuny for her license, which she did not have on her person. Lopez detected an odor of alcohol coming from Cuny and noticed her speech was slurred. Youngman then approached Cuny and detected an odor of alcohol on her breath. Youngman asked Cuny to perform field sobriety tests, from which Youngman determined that Cuny was under the influence of alcohol. Youngman radioed the Sheridan County authorities, and Cuny was detained until Sheridan County Sheriff Terry E. Robbins arrived 10 to 15 minutes later. Robbins discussed the situation with Youngman, and Youngman informed him of the events leading up to the detention of Cuny. Robbins then went to talk to Cuny and noticed that her eyes were red and watery and that she had a faint odor of alcohol on her breath. Cuny admitted to Robbins that she had been driving the vehicle. Robbins administered field sobriety tests, from which he determined that Cuny was under the influence of alcohol, and placed her under arrest. Cuny was taken back to the Sheridan County sheriff's office, where she performed additional sobriety tests.

Cuny was charged with one count of DUI, a violation of § 60-6,196, and one count of not having an operator's license, a violation of Neb. Rev. Stat. § 60-484 (Cum. Supp. 1996).

Cuny subsequently pled guilty to not carrying her license while operating her vehicle. Thereafter, a single count of DUI was tried before a jury in the Sheridan County Court.

Before the trial, however, Cuny moved to suppress all evidence against her, alleging that she was subjected to an unlawful investigatory stop, detention, and arrest in Sheridan County by police officers of the Pine Ridge Police Department. Further, at the outset of the trial, Cuny renewed her motion to suppress and further moved to dismiss the case based on the same actions

of the Pine Ridge police officers. Upon conclusion of the State's case in chief, Cuny again renewed her motion to suppress and, further, moved for a directed verdict. All of Cuny's motions were denied.

The jury found Cuny guilty of DUI. Cuny subsequently appealed to the Sheridan County District Court, which affirmed the denial of the motion to suppress and consequently affirmed Cuny's conviction.

## ASSIGNMENTS OF ERROR

Cuny assigns that the trial court erred in overruling her motions to suppress and motion to dismiss because (1) the Pine Ridge police officers did not have power or authority in Sheridan County to effect the investigatory stop, custodial detention, and transfer of custody of Cuny to the sheriff of Sheridan County; (2) the Pine Ridge police officers did not have the power or authority to effect a proper and lawful search and seizure of Cuny in Sheridan County; (3) the sheriff of Sheridan County did not have the power or authority to effect a proper and lawful search and seizure of Cuny in Sheridan County; and (4) the sheriff of Sheridan County lacked justification for the investigatory stop.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998).

## ANALYSIS

We must first decide whether the Pine Ridge police officers had the authority to stop and detain or arrest Cuny. The power of a police officer at common law to make an arrest without a warrant is limited to the boundaries of the governmental unit by which he or she was appointed, unless the police officer

is acting in fresh and continued pursuit of a suspected felon who has committed an offense in the officer's presence and within his or her territorial jurisdiction. *State v. Masat*, 239 Neb. 849, 479 N.W.2d 131 (1992). It is clear that the common-law exception of "fresh pursuit" does not apply to Cuny's case. Common-law fresh pursuit is limited to felonies, and Cuny was charged with a violation of § 60-6,196, a Class W misdemeanor. There being no authority under common law for the Pine Ridge police officers to arrest a misdemeanant suspect outside the officers' geographical jurisdiction, the State must rely upon statutory authorization to prove that the actions of the Pine Ridge police officers were lawful. See, *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991), citing *Perry v. State*, 303 Ark. 100, 794 S.W.2d 141 (1990).

Once the Pine Ridge police officers left the reservation and entered Nebraska, they were outside the territorial limits of their jurisdiction. Therefore, the question becomes whether there is statutory authority that gives the Pine Ridge police officers the power to apprehend a suspected misdemeanor offender in Nebraska.

The district court found that Neb. Rev. Stat. § 29-215(2)(b) (Reissue 1995) is such a statute. Section 29-215(2)(b) states as follows:

> Any such law enforcement officer who is within this state, but beyond the territorial limits of his or her primary jurisdiction, shall have the power and authority to enforce the laws of this state or any legal ordinance of any city or incorporated village or otherwise perform the functions of his or her office, including the authority to arrest and detain suspects, as if enforcing the laws or performing the functions within the territorial limits of his or her primary jurisdiction in the following cases:
>
> . . . .
> . . . Any such law enforcement officer, if in a fresh attempt to apprehend a person suspected of committing a misdemeanor or a traffic infraction, may follow such person anywhere in an area within twenty-five miles of the boundaries of the law enforcement officer's primary jurisdiction and there arrest and detain such person and return

such person to the law enforcement officer's primary jurisdiction.

■ Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Torres*, 256 Neb. 380, 590 N.W.2d 184 (1999); *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998). It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *State v. Woods, supra.*

■ Section 29-215 does give certain extrajurisdictional arrest powers to certain law enforcement officers. However, we conclude that § 29-215 applies only to Nebraska law enforcement officers and does not apply to law enforcement officers who cross state lines. This conclusion is supported by the language of § 29-215(1):

> Every sheriff, deputy sheriff, marshal, deputy marshal, police officer, or peace officer as defined in subdivision (15) of section 49-801 shall have the power and authority to enforce the *laws of this state and of the political subdivision which employs* the law enforcement officer or otherwise perform the functions of that office anywhere within his or her primary jurisdiction. *Primary jurisdiction shall mean the geographic area within territorial limits of the state or political subdivision which employs the law enforcement officer.*

(Emphasis supplied.) Therefore, we hold that § 29-215 does not authorize an out-of-state police officer to arrest a suspect for a misdemeanor DUI inside Nebraska. The Pine Ridge police officers did not have the authority to pursue and arrest Cuny for a misdemeanor offense in Nebraska. As such, their stop and detainment, or arrest, of Cuny was unlawful.

■ Having concluded that the actions of the Pine Ridge police officers were unlawful, we find the evidence obtained by Robbins was the fruit of an illegal search or seizure, in violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, is inadmissible in a state prosecution, and must be excluded. See *State v. Tingle*, 239 Neb.

558, 477 N.W.2d 544 (1991), citing *State v. O'Kelly*, 175 Neb. 798, 124 N.W.2d 211 (1963), *cert. denied* 376 U.S. 956, 84 S. Ct. 978, 11 L. Ed. 2d 975 (1964). After concluding that the Pine Ridge police officers were without authority to make the stop and arrest, we hold that Cuny's arrest was unlawful and that the trial court was clearly wrong in not suppressing all evidence obtained pursuant to the illegal actions.

## CONCLUSION

We conclude that the Pine Ridge police officers did not have the authority to arrest Cuny, and therefore, such actions were unlawful. For the foregoing reasons, Cuny's arrest was illegal, and all evidence obtained pursuant to the illegal arrest should have been suppressed. We reverse, and dismiss.

REVERSED AND DISMISSED.